**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-4216**

———————————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

ANTWAIN GUANTERIO PRICE,

        Defendant – Appellant.

---------------------------

BRADLEY NELSON GARCIA,

        Court-Assigned Amicus Counsel.

———————————

Appeal from the United States District Court for the District of South Carolina, at Rock Hill.  Joseph F. Anderson, Jr., District Judge.  (0:12-cr-00374-JFA-1)

———————————

Argued: December 9, 2014         Decided: February 3, 2015

———————————

Before MOTZ and KING, Circuit Judges, and Arenda L. Wright ALLEN, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————————

Affirmed in part, vacated in part, and remanded by published opinion.  Judge King wrote the opinion, in which Judge Motz and Judge Allen joined.

———————————

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Tommie

DeWayne Pearson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. Bradley Nelson Garcia, O'MELVENY & MYERS, LLP, Washington, D.C., as Court-Assigned Amicus Counsel. **ON BRIEF:** John H. Hare, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. William N. Nettles, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. Gregory F. Jacob, Rakesh Kilaru, O'MELVENY & MYERS, LLP, Washington, D.C., for Court-Assigned Amicus Counsel.

KING, Circuit Judge:

Antwain Guanterio Price was charged in the District of South Carolina in May 2012 with knowingly failing to register as a sex offender as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a).[1] The single-count indictment alleged that Price was subject to SORNA's registration requirement because of his prior South Carolina conviction for the common law offense of assault and battery of a high and aggravated nature ("ABHAN"). Price sought dismissal on the ground that his ABHAN conviction was not for a "sex offense" under SORNA. By order of August 2, 2012, the district court denied Price's motion, predicating its ruling on the facts underlying the ABHAN conviction. See United States v. Price, No. 0:12-cr-00374 (D.S.C. Aug. 2, 2012), ECF No. 55 (the "Denial Order").[2] Price thereafter conditionally pleaded guilty to the § 2250(a) offense and was sentenced to two years in prison. The court also imposed a life term of supervised

---

[1] SORNA is primarily codified at 42 U.S.C. §§ 16901-16962, and a failure to register pursuant to its provisions violates 18 U.S.C. § 2250(a). As relevant here, § 2250(a) provides criminal penalties for any person who "is required to register under [SORNA]," "travels in . . . interstate commerce," and "knowingly fails to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250(a)(1), (2)(B), (3).

[2] The Denial Order is found at J.A. 78-82. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3

release, based on its determination that the ABHAN conviction was for a "sex offense" under section 5D1.2(b)(2) of the Sentencing Guidelines.

Price filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. On appeal, he maintains that the district court erred in declining to dismiss the indictment and in calculating his advisory Guidelines range for supervised release. As explained below, we are satisfied that the Denial Order properly applied the "circumstance-specific approach" (sometimes called the "noncategorical approach") in deciding that Price was subject to SORNA's registration requirement. The court erred, however, in ruling that Price's § 2250(a) conviction was for a sex offense under Guidelines section 5D1.2(b)(2). We therefore affirm in part, vacate in part, and remand for resentencing.[3]

---

[3] We ordered the parties to submit supplemental briefing in this appeal to address recent authorities that might be applicable, including Descamps v. United States, 133 S. Ct. 2276 (2013), and United States v. Hemingway, 734 F.3d 323 (4th Cir. 2013). Because the government initially asserted that a different approach applied to an analysis of Price's dismissal issue, we appointed amicus counsel (the "Amicus") to argue the position of the district court — namely, that the circumstance-specific approach was the correct analytical vehicle. The government thereafter submitted a letter under Federal Rule of Appellate Procedure 28(j), altering its position and agreeing with the Amicus that the circumstance-specific approach is correct. The Amicus has ably discharged his duties, and we commend his efforts.

4

I.

A.

We first address Price's contention that his indictment should have been dismissed. Before delving into the relevant factual and procedural background, we review certain legal principles that are important to this issue.

1.

SORNA establishes a comprehensive regulatory scheme to track and provide community notification regarding convicted sex offenders. Pursuant thereto, a person convicted of a sex offense must register in each state in which he resides, is employed, or is a student. See 42 U.S.C. §§ 16911(1), 16913. If a sex offender changes his residence, employment, or student status, he must update his registration within three business days, so that the sex offender registry remains current. Id. § 16913(c). SORNA also requires each state to maintain its own sex offender registry that conforms to SORNA's requirements. Id. §§ 16911(10)(A), 16912(a).

Although SORNA "is a non-punitive, civil regulatory scheme, both in purpose and effect," noncompliance with the statute can result in criminal prosecution under 18 U.S.C. § 2250(a). See United States v. Under Seal, 709 F.3d 257, 263 (4th Cir. 2013). A prerequisite to SORNA's registration requirement — and to criminal penalties under § 2250(a) — is that the defendant has

been convicted of a sex offense. See 18 U.S.C. § 2250(a)(1); 42 U.S.C. §§ 16911(1), 16913. Section 16911(5)(A) of Title 42 includes the following definitions of a "sex offense" for purposes of SORNA:

> (i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or]
>
> (ii) a criminal offense that is a specified offense against a minor.

42 U.S.C. § 16911(5)(A)(i)-(ii).[4] Subsection (5)(A)(ii)'s reference to a "specified offense against a minor" is further defined in subsection (7) of § 16911, which identifies multiple offenses — such as kidnapping, child pornography, and criminal sexual conduct, see id. § 16911(7)(A)-(H) — and contains a catch-all that encompasses "[a]ny conduct that by its nature is a sex offense against a minor," id. § 16911(7)(I).

### 2.

A person who fails to properly register violates 18 U.S.C. § 2250(a) if his prior conviction was for a sex offense within the meaning of SORNA. Therefore, a district court must examine the underlying offense of conviction to determine whether it satisfies the statutory definition. The Supreme Court has

---

[4] SORNA also defines a "sex offense" to include certain specified federal and military offenses. See 42 U.S.C. § 16911(5)(A)(iii)-(iv). Additionally, an attempt or conspiracy to commit one of the enumerated sex offenses constitutes a sex offense. Id. § 16911(5)(A)(v).

6

developed three analytical frameworks that potentially control the scope of materials that a court may consider in that regard, as well as the focus of the court's inquiry. Those frameworks are the "categorical approach," the "modified categorical approach," and, as previously mentioned, the "circumstance-specific approach" (also known as the "noncategorical approach").

First, the categorical approach focuses solely on the elements of the offense of conviction, comparing those to the commonly understood elements of the generic offense identified in the federal statute. See Taylor v. United States, 495 U.S. 575, 602 (1990) (requiring court to "look only to the fact of conviction and the statutory definition of the prior offense"). The elements comprising the statute of conviction must be the same as, or narrower than, those of the generic offense in order to find a categorical match. Id. at 599. If, however, the court finds "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime," there is no categorical match and the prior conviction cannot be for an offense under the federal statute. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Because the categorical approach looks squarely at the elements of the offense of conviction, a reviewing court is precluded from examining the

7

circumstances underlying the prior conviction. See Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) ("The key . . . is elements, not facts.").

Second, the modified categorical approach is an off-shoot of the traditional categorical approach, and similarly focuses on elements rather than facts. The modified approach comes into play if the defendant was previously convicted under a divisible statute, meaning that the offense contains a set of alternative elements. See Descamps, 133 S. Ct. at 2281. In such circumstances, the reviewing court conducts an analysis identical to the categorical approach, but with a detour. That is, the court is entitled to refer to certain documents from the underlying case to discern which alternative element formed the basis of conviction. See Shepard v. United States, 544 U.S. 13, 19-20 (2005). The documents that may be referenced are limited, but include: the indictment or information; the plea agreement or transcript of the plea colloquy; the court's formal legal rulings and factual findings of a bench trial; and jury instructions. See id. at 20, 26. The focus of the modified categorical approach remains squarely on the elements of the prior conviction, however, and the reviewing court is not entitled to assess whether the defendant's actual conduct matches the federal statute.

Finally, the circumstance-specific approach (or, noncategorical approach) is a different species of analysis altogether. The circumstance-specific approach focuses on the facts — not the elements — relating to the prior conviction. That broader framework applies when the federal statute refers "to the specific way in which an offender committed the crime on a specific occasion," rather than to the generic crime. Nijhawan v. Holder, 557 U.S. 29, 34 (2009). In utilizing the circumstance-specific approach, the reviewing court may consider reliable evidence concerning whether the prior offense involved conduct or circumstances that are required by the federal statute.[5]

## B.

Having identified and discussed the foregoing legal principles, we turn to the specifics of Price's motion to dismiss. The relevant facts are not in dispute.

## 1.

On May 13, 2010, a grand jury in York County, South Carolina, returned an indictment charging Price with a single

---

[5] We are satisfied to utilize the term "circumstance-specific" to describe this third approach, adhering to the example set by the Supreme Court in Nijhawan. See 557 U.S. at 34 (using term "circumstance-specific" to describe analytic framework "referring to the specific way in which an offender committed the crime on a specific occasion").

count of criminal sexual conduct with a minor.  See S.C. Code Ann. § 16-3-655.  The indictment — which did not refer to an ABHAN offense — alleged that, on or about December 15, 2007, Price committed "criminal sexual conduct with a minor" by "commit[ting] a sexual battery" on a victim who was twelve years old.  J.A. 23.  Price subsequently entered into plea negotiations with the prosecution.

Pursuant to those negotiations, on July 15, 2010, Price pleaded no contest to an ABHAN offense in the Court of General Sessions of York County.  In the plea proceedings, the prosecutor represented that ABHAN was a lesser-included offense of the charge in the indictment.  At the time of Price's offense, ABHAN was a common law crime in South Carolina, the elements of which included "the unlawful act of violent injury to another, accompanied by circumstances of aggravation."  See State v. Easler, 489 S.E.2d 617, 624 (S.C. 1997).[6]  The "circumstances of aggravation" requirement of an ABHAN offense could be satisfied in a number of ways, including

---

[6] Although South Carolina codified ABHAN as a felony offense effective June 2, 2010, see S.C. Code Ann. § 16-3-600(B)(1), that enactment post-dated the commission of Price's offense. Thus, the common law crime of ABHAN is the only ABHAN offense relevant to this appeal. See United States v. Hemingway, 734 F.3d 323, 327 n.1 (4th Cir. 2013) (applying common law ABHAN elements — rather than statutory ones — because offense conduct occurred prior to enactment of ABHAN statute).

10

use of a deadly weapon, infliction of serious bodily injury, intent to commit a felony, disparity in age, physical condition or sex, indecent liberties, purposeful infliction of shame, resistance of law authority, and others.

Id. at 624 n.17.

During Price's plea colloquy in the state court in 2010, the prosecutor — apparently pursuant to an oral plea agreement — summarized the factual basis for the ABHAN offense as follows:

These events occurred — reported to have occurred back between 2007 and 2008. Initially a report was made to the Akron Ohio Police Department that the step-father of the minor who was . . . eleven at the time in Ohio had been abused by Mr. Price, her step-father. This continued when the family moved to . . . Rock Hill, York County, South Carolina. The allegations were alleged to have happened at that house as well as another jurisdiction in South Carolina, and the victim would've been twelve years old at the time and she reported in 2009 that she had been abused and been required to perform oral sex on this defendant.

J.A. 52. Price responded in the affirmative when the state court asked, "Do you agree if you went to trial those facts would be what the State would present to the jury?" Id. The court then accepted his no-contest plea to the ABHAN offense. The court also accepted Price's negotiated sentence, which was for time served, but required that Price be placed on South Carolina's central registry of child abuse and sex offender registry.

Following his release from state custody after his ABHAN conviction and sentencing, Price moved to Georgia. He

11

registered there as a sex offender on July 27, 2010. Around November 1, 2010, Price moved to Ohio but failed to register as a sex offender there. As a result, the City of Akron issued a warrant for his arrest on February 1, 2011. Price, then a fugitive, resided in Arizona from September 2011 until February 2012. He moved back to South Carolina in February 2012, where he again failed to register as a sex offender. On March 17, 2012, Price was arrested on the basis of the Ohio warrant in Rock Hill, South Carolina.

2.

On April 2, 2012, a criminal complaint was filed in the District of South Carolina, alleging that Price had knowingly failed to register as a sex offender, in contravention of 18 U.S.C. § 2250(a). The single-count indictment for that offense was returned on May 1, 2012, alleging that Price's South Carolina ABHAN conviction in July 2010 was for a sex offense under SORNA, and that he violated § 2250(a) by travelling in interstate commerce and failing to register and update his registration as a sex offender, as required by SORNA.

By motion of June 21, 2012, Price sought dismissal of the indictment. He therein argued that his ABHAN conviction was not for a sex offense under SORNA, and therefore that he was not subject to SORNA's registration requirement. The district court denied Price's dismissal motion on August 2, 2012, deeming the

12

record "sufficient to indicate that [Price] was convicted of a sex offense as defined by SORNA." See Denial Order 3. The court reasoned that it could review the record of Price's ABHAN conviction under the noncategorical approach — which we call the circumstance-specific approach — relying on decisions of the Ninth and Eleventh Circuits. Id. at 4 (citing United States v. Dodge, 597 F.3d 1347, 1354 (11th Cir. 2010) (en banc); United States v. Mi Kyung Byun, 539 F.3d 982, 992 (9th Cir. 2008)). Employing that approach, the court reviewed the facts underlying Price's ABHAN conviction, as reflected in the plea colloquy in the York County proceedings. That colloquy revealed that the prosecutor had "recounted the facts of the offense: defendant forced his twelve year old step-daughter to perform oral sex on him." Id. at 3. Price "affirmatively answered that he knew those facts would be presented to the jury if he went to trial," evidencing that he understood the ABHAN charge. Id. The court observed that Price had agreed to register on the state sex offender registry. The court thus discerned "ample evidence to indicate that the ABHAN plea in this case rested on indecent liberties with a female as the aggravating circumstance, and therefore constituted a sex offense." Id. As a result, the court concluded that Price was required to register under SORNA and denied his motion to dismiss.

13

On August 27, 2012, Price pleaded guilty in the district court to violating 18 U.S.C. § 2250(a), as charged in the indictment. Nonetheless, Price reserved his right, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, to appeal the court's denial of his motion to dismiss.

C.

The issue with respect to the dismissal motion is purely legal and one that we review de novo: Did the district court err in applying the circumstance-specific approach to its assessment of whether Price's ABHAN offense satisfied the statutory definition of a "sex offense" under SORNA? See United States v. Hatcher, 560 F.3d 222, 224 (4th Cir. 2009) ("This Court reviews de novo the district court's denial of a motion to dismiss an indictment where the denial depends solely on questions of law."). At the outset, that question is circumscribed in certain respects. As the government now concedes, our decision in United States v. Hemingway, 734 F.3d 323, 333-34 (4th Cir. 2013), determined that the common law offense of ABHAN — on which Price was convicted in York County — is indivisible, rendering the modified categorical approach inapplicable. Additionally, because our review is de novo and we "may affirm on any grounds apparent from the record," United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005), we are entitled to focus on the definition of a "sex offense" provided

14

by 42 U.S.C. § 16911(5)(A)(ii) and its extended definition at § 16911(7)(I), as those provisions contain the definition of a "sex offense" that is most relevant here. Read together, they define a "sex offense" as a criminal offense involving "[a]ny conduct that by its nature is a sex offense against a minor." See 42 U.S.C. § 16911(5)(A)(ii), (7)(I).[7]

1.

We must assess, then, whether the categorical approach or the circumstance-specific approach applies to our analysis. At least two of our sister circuits have grappled with that very question, and each has concluded that what we call the circumstance-specific approach — which they refer to as the noncategorical approach — is applicable to an analysis under 42 U.S.C. § 16911(7). See United States v. Dodge, 597 F.3d 1347, 1356 (11th Cir. 2010) (en banc) (holding that "courts may employ a noncategorical approach to examine the underlying facts of a defendant's offense, to determine whether a defendant has committed a 'specified offense against a minor' [under 42 U.S.C. § 16911(7)]"), cert. denied, 131 S. Ct. 457 (2010); United States v. Mi Kyung Byun, 539 F.3d 982, 990-94 (9th Cir. 2008)

---

[7] The Denial Order did not explicitly identify which aspect of 42 U.S.C. § 16911's definition of a "sex offense" it relied upon in determining that Price's ABHAN conviction constituted a sex offense.

15

(concluding that court should apply noncategorical approach to determination of age of victim under 42 U.S.C. § 16911(7)), cert. denied, 555 U.S. 1088 (2008). We agree with those courts of appeals and are satisfied to apply the circumstance-specific approach to our resolution of this appeal.

a.

First, the text, structure, and purpose of the relevant SORNA provisions show that Congress intended for the circumstance-specific approach to apply to an analysis of subsection (7)(I). The Supreme Court has repeatedly analyzed the specific terms in federal statutes to determine whether Congress intended for an element- or fact-based approach to apply. For example, the Court has interpreted the words "conviction" and "element" to indicate that Congress meant for the statutory definition to cover a generic offense, implicating the categorical and modified categorical frameworks. See, e.g., Taylor, 495 U.S. at 600-01 (reasoning that Congress's use of words "conviction" and "element" in Armed Career Criminal Act, 18 U.S.C. § 924(e), supports categorical approach). By contrast, where a statute contains "language that . . . refers to specific circumstances" or conduct, the Court has determined that Congress meant to allow the circumstance-specific approach's more searching factual inquiry concerning a prior offense. See Nijhawan, 557 U.S. at 37.

16

The language and structure of § 16911 underscore the proposition that an analysis of subsection (7)(I) requires use of the circumstance-specific approach.[8] Congress expressly referenced the "elements" of the offense in subsection (5)(A)(i), providing that one such element must involve "a sexual act or sexual contact with another." But neither subsection (5)(A)(ii) nor its extension at subsection (7) refers to "elements." That contrasting terminology indicates that Congress drafted subsections (5)(A)(ii) and (7) to cover a broader range of prior offenses than those reached by subsection (5)(A)(i). See Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). Similarly,

---

[8] Repetition sometimes being helpful, 42 U.S.C. § 16911 defines a "sex offense" at subsections (5)(A)(i) and (5)(A)(ii) as follows:

(i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or]

(ii) a criminal offense that is a specified offense against a minor.

Additionally, a "specified offense against a minor" is defined at subsection (7)(I) to include "[a]ny conduct that by its nature is a sex offense against a minor."

17

subsection (7)(I)'s explicit reference to the "conduct" underlying a prior offense, as well as the "nature" of that conduct, refers to how an offense was committed — not a generic offense. See Nijhawan, 557 U.S. at 37-39. The text of SORNA thus indicates that Congress intended that the broader circumstance-specific analysis be applicable with respect to subsection (7)(I). See Dodge, 597 F.3d at 1354-55.

The purpose of SORNA also supports the use of a circumstance-specific approach and our interpretation of subsection (7)(I). Although subsection (5)(A)(i) includes certain prior offenses without regard to whether the victim was a child or an adult, subsections (5)(A)(ii) and (7) are applicable only where the victim was a minor. Through SORNA, Congress sought "to protect the public from sex offenders and offenders against children," and was responding "to the vicious attacks by violent predators." 42 U.S.C. § 16901. In light of SORNA's focus on children, Congress's use of broader language in defining a "sex offense" for victims who are minors makes clear its intention that the circumstance-specific approach should apply. The Supreme Court reached a similar conclusion in United States v. Hayes, 555 U.S. 415, 426-27 (2009), where it analyzed a statute criminalizing firearm possession by persons convicted of a "misdemeanor crime of domestic violence." Observing that Congress intended to close loopholes and apply the statute

18

broadly to confront domestic violence, the Court reasoned that the legislative history supported use of a factual analysis on the specific issue of a domestic relationship.  See id.  We thus agree with the Eleventh Circuit's well-reasoned conclusion in Dodge that the text and purpose of SORNA demonstrate Congress's intention that the circumstance-specific approach should be utilized in an analysis of the applicability of subsection (7)(I).  See Dodge, 597 F.3d at 1352-53.[9]

b.

Second, Sixth Amendment concerns that compel the judicial use of the categorical approach in other contexts are simply not

---

[9] We are also satisfied to reject Price's contention that the federal regulations interpreting SORNA, commonly called the "SMART Guidelines," are helpful to him here.  See Office of the Attorney General, National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,052 (July 2, 2008).  The SMART Guidelines address subsection (7)(I) by using terms such as "convictions" and "element," which could indicate a preference for the categorical approach — had Congress used them in the text of subsection (7)(I).  We need not accord Chevron deference to those Guidelines, although Price urges us to do so.  See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984) (concluding that, where federal statute is silent or ambiguous, administering agency's permissible construction controls).  To accept Price's argument on that point, we would have to decide that Congress's use of the terms "conduct" and "nature" of that conduct, combined with its omission of the word "element" in subsections (5)(A)(ii) and (7), is ambiguous or silent as to the proper method of analysis.  We would then have to decide that the SMART Guidelines provide a clear and reasonable interpretation of those subsections.  We are unwilling to accept those propositions.

19

present here. In other situations — such as where a prior conviction may trigger a sentencing enhancement, increasing a defendant's punishment — the Sixth Amendment requires a reviewing court to apply the categorical approach. See Descamps, 133 S. Ct. at 2288. As Descamps explained, the categorical approach is essential in the context of a sentencing enhancement, in order to ensure that a defendant's punishment is not increased on the basis of facts that were not found by a jury. See id. And "the only facts the court can be sure the jury so found are those constituting elements of the offense — as distinct from amplifying but legally extraneous circumstances." Id.

Price argues, however, that the Sixth Amendment also requires use of the categorical approach in an analysis of a 42 U.S.C. § 16911(7)(I) issue, in order to ensure that the defendant was, in fact, convicted of a sex offense. On that point, the Supreme Court's Nijhawan decision is instructive. There, the Court considered whether the categorical approach was required by the Sixth Amendment to be used in the determination of a loss amount in a deportation proceeding. The petitioner argued that the loss-amount finding could lead to a more severe sentence in a criminal proceeding for illegal reentry, and thus contended that the Sixth Amendment required use of the categorical analysis with respect to loss amount. See Nijhawan,

557 U.S. at 40. The Court disagreed, reasoning that "the later jury, during the illegal reentry trial, would have to find loss amount beyond a reasonable doubt," thereby "eliminating any constitutional concern." Id.

Here, even applying the circumstance-specific approach, Price was entitled to go to trial and have a jury determine beyond a reasonable doubt whether his York County conviction was for a sex offense under SORNA. Price gave up that Sixth Amendment right, however, when he pleaded guilty to the § 2250(a) offense in federal court. See United States v. Ruiz, 536 U.S. 622, 629 (2002) (observing that, by pleading guilty, defendant "forgoes not only a fair trial, but also other accompanying constitutional guarantees," including the Sixth Amendment right to a jury trial). Had Price gone to trial in the District of South Carolina, the prosecution would have borne the burden of proving, beyond a reasonable doubt, that he had been previously convicted of a sex offense — an essential element of 18 U.S.C. § 2250(a). The jury would thus have examined the evidence presented to it concerning the facts underlying Price's 2010 ABHAN offense, and then decided whether that evidence satisfied SORNA's definition of a "sex offense."

2.

In sum, we conclude that Congress intended for reviewing courts to utilize the circumstance-specific approach to

21

determine whether a prior conviction was for a sex offense under SORNA, within the meaning of 42 U.S.C. § 11691(5)(A)(ii), as expanded by subsection (7)(I).  We therefore affirm the district court's denial of Price's motion to dismiss the indictment.

II.

Price additionally assigned error to the district court's calculation of his advisory Sentencing Guidelines range with respect to supervised release.  Guidelines section 5D1.2 contains the applicable supervised-release provisions.  As relevant here, subsection (a)(2) provides for an advisory range of one to three years for a defendant convicted of a Class C felony (such as a violation of 18 U.S.C. § 2250(a)), except as provided by subsections (b) and (c).  Pursuant to subsection (b)(2), the term of supervised release "may be up to life if the offense is . . . a sex offense."  Under subsection (c), the "term of supervised release imposed shall be not less than any statutorily required term of supervised release."

The facts relating to Price's sentence are straightforward. Price's presentence report (the "PSR"), which was accepted by the district court at the sentencing hearing on March 14, 2013, concluded that the applicable statutory provision required imposition of a term of supervised release of five years to life.  See 18 U.S.C. § 3583(k).  The PSR computed Price's

22

advisory Guidelines range by first observing that the five-year minimum term of supervised release required by statute fixed the minimum advisory Guidelines range. See USSG § 5D1.2(c). The PSR then determined that Price's § 2250(a) conviction was for a sex offense, and thus calculated the upper-end of the advisory range to be life, applying Guidelines section 5D1.2(b)(2). Consequently, the PSR concluded, Price's advisory Guidelines range for supervised release was five years to life. Price made no objections to the PSR. The court then sentenced Price to twenty-four months in prison and imposed a life term of supervised release, "with the provisio" that he could seek to terminate supervision after five years if he complied with the conditions of release. See J.A. 115.

Price now argues that the district court erred in applying Guidelines section 5D1.2(b)(2) to increase the upper-limit of his advisory Guidelines range to a life term. He maintains that the offense at issue — failing to register as a sex offender in violation of § 2250(a) — is not a "sex offense" under that Guidelines provision. When a defendant has failed to object on a sentencing contention being pursued on appeal, the issue is subject to plain error review only. See United States v. Grubb, 11 F.3d 426, 440 (4th Cir. 1993). To satisfy such a review, "we must find that (1) an error was committed, (2) the error was plain, and (3) the error affected the defendant's substantial

23

rights." United States v. Ford, 88 F.3d 1350, 1355 (4th Cir. 1996). If those "threshold requirements are satisfied, we must also decide whether the error 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 1355-56 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

Our Court decided the precise issue raised by Price only a few weeks ago in United States v. Collins, 773 F.3d 25 (4th Cir. 2014). Judge Floyd's decision recognized that a clarifying amendment to the Guidelines, effective November 1, 2014, makes clear that "failing to register as a sex offender under SORNA is not a 'sex offense' for the purposes of the Guidelines." Id. at 32. Thus, Price was not subject to the enhanced advisory Guidelines range for supervised release under section 5D1.2(b)(2). Moreover, a second clarifying amendment, also effective November 1, 2014, establishes that, where the statutory minimum term of supervised release is greater than the advisory Guidelines range, section 5D1.2(c) operates to create an advisory term of a "single point" at the statutory minimum. Id. The phrase "single point" refers to a Guidelines recommendation of a specific sentence, rather than a range. See United States v. Goodwin, 717 F.3d 511, 520 (7th Cir. 2013) ("[T]he properly calculated advisory Guidelines 'range' for [defendant's] offense appears to actually be a point: five

24

years."). As a result, the Guidelines recommend that Price receive a five-year term of supervised release, rather than a term within a range of five years to life.

In light of our Collins decision, Price has shown plain error that entitles him to relief. First, Collins establishes that the district court's calculation of Price's advisory Guidelines range as to supervised release was erroneous. Second, because the issue concerning the Guidelines range calculation has been resolved in this Court, the error is plain. See Henderson v. United States, 133 S. Ct. 1121, 1130 (2013) (concluding that, "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be plain at the time of appellate consideration" (internal quotation marks omitted)). Third, the calculation error affected Price's substantial rights because the record indicates that the erroneous calculation of the advisory Guidelines range caused him to be sentenced to a more severe term of supervised release. See Ford, 88 F.3d at 1356 ("The error clearly affected [defendant's] substantial rights because the extra points caused [him] to be sentenced at a more severe guideline range."). Finally, "sentencing a defendant at the wrong guideline range seriously affects the fairness, integrity, and public reputation of the judicial proceedings." Id.

We thus conclude that the district court's calculation of Price's advisory Guidelines range concerning supervised release was plainly erroneous and that the error should be recognized and corrected. We therefore vacate and remand for resentencing on the supervised release question.

## III.

Pursuant to the foregoing, we affirm Price's conviction for failing to register under SORNA, vacate the supervised release sentence, and remand for such further sentencing proceedings as may be appropriate.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED
