**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4934**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

BRIAN KEITH BERRY,

             Defendant - Appellant.

-------------------------

FEDERAL PUBLIC DEFENDER OFFICE,

             Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:13-cr-00329-FL-1)

Argued:  December 10, 2015       Decided:  February 19, 2016

Before WILKINSON, KING, and WYNN, Circuit Judges.

Vacated and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED**: Jorgelina E. Araneda, ARANEDA LAW FIRM, Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States

Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, Jennifer C. Leisten, Research & Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Amicus Curiae.

WYNN, Circuit Judge:

Defendant Brian Keith Berry was convicted of a sex offense in state court and obligated to register under the federal Sex Offender Registration and Notification Act, also known as SORNA. Defendant failed to register as required and pled guilty to violating 18 U.S.C. § 2250(a).

At sentencing, the district court calculated Defendant's United States Sentencing Guidelines ("Guidelines") range as if he were a tier III sex offender. Defendant challenges that tier designation. Using the categorical approach, which we hold applicable here, and comparing his state court conviction for endangering the welfare of a child to the generic offenses enumerated in 42 U.S.C. § 16911(4)(A), we must agree: the district court erred in deeming Defendant a tier III offender. Accordingly, we vacate Defendant's sentence and remand for resentencing.

I.

In 2002, Defendant pled guilty in New Jersey state court to endangering the welfare of a child in violation of N.J. Stat. Ann. § 2C:24-4(a) (2002). Upon Defendant's release from prison, he was advised that he must register as a sex offender with the New Jersey police. He initially registered with a New Brunswick, New Jersey, address; but, in March 2013, law enforcement agents found that he no longer lived at that listed

3

address. Thereafter, the State of New Jersey thus issued a warrant to arrest Defendant for violating the conditions of his parole. Ultimately, Defendant was found in North Carolina where he admitted to law enforcement officials that he had not registered as a sex offender in the State of North Carolina.

Defendant pled guilty to one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250. At sentencing, the district court found Defendant to be a tier III sex offender under SORNA, with a corresponding base offense level of sixteen. In a memorandum opinion, the court explained that its tier III determination was "based upon description of the conduct underlying defendant's prior sex offense as set forth in the presentence report." United States v. Berry, No. 5:13-CR-329-FL-1, 2014 WL 7149736, at *1 (E.D.N.C. Dec. 15, 2014). The court found that the conduct underlying the offense, penetrating the vagina of a five-year-old victim with his hand, was comparable to the offense of "abusive sexual contact . . . against a minor who has not attained the age of 13 years" listed in the definition of a tier III sex offender in 42 U.S.C. § 16911(4)(A). Id. at *3.

Based on his tier III designation and other factors, the district court determined Defendant's Guidelines range to be thirty-three to forty-one months. The district court sentenced Defendant to thirty-three months in prison and five years of

4

supervised release. Defendant appeals, arguing that the district court erred in its determination that he qualified as a tier III sex offender.

## II.

## A.

On appeal, we must determine whether the district court imposed an unreasonable sentence by calculating Defendant's Guidelines range as if he were a tier III sex offender under SORNA. We review sentences under an abuse of discretion standard.[1] Gall v. United States, 552 U.S. 38, 51 (2007). Such a review includes procedural and substantive reasonableness components. Id.; United States v. Dimache, 665 F.3d 603, 606 (4th Cir. 2011). Relevant here, a sentence is procedurally unreasonable if the district court "fail[ed] to calculate (or improperly calculat[ed]) the Guidelines range." Gall, 552 U.S. at 51; United States v. Avila, 770 F.3d 1100, 1103 (4th Cir. 2014). Further, "[w]hen considering a sentence's reasonableness, we 'review the district court's legal

---

[1] We reject out of hand the government's suggestion that Defendant failed to preserve this issue and that we should thus review only for plain error. The record clearly shows that Defendant's counsel objected to the district court's tier classification and the court's consideration of the facts and circumstances surrounding Defendant's prior sex offense conviction. Not surprisingly, the district court thus addressed the preserved argument in its memorandum opinion. Berry, 2014 WL 7749736, at *2. We do the same.

conclusions de novo and its factual findings for clear error.'" United States v. Thornton, 554 F.3d 443, 445 (4th Cir. 2009) (quoting United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir. 2008)).

B.

SORNA requires sex offenders to register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). Further, sex offenders must update their registration upon a change in residence. Id. § 16913(c). And 18 U.S.C. § 2250 imposes criminal penalties on persons who are required, but knowingly fail, to register.

SORNA classifies sex offenders into three tiers depending on the nature of their underlying sex offense. 42 U.S.C. § 16911(2)–(4). Sex offenders who have committed more serious sex offenses are classified under tiers II and III. Id. § 16911(3)–(4). Tier I is a catch-all provision for all other sex offenders. Id. § 16911(2). A defendant's tier designation plays into his sentencing, as the Guidelines assign base offense levels of sixteen, fourteen, and twelve for tier III, tier II, and tier I sex offenders, respectively. U.S.S.G. § 2A3.5(a).

To determine a defendant's tier classification, courts compare the defendant's prior sex offense conviction with the offenses listed in SORNA's tier definitions. See 42 U.S.C.

6

§ 16911(2)–(4).  Courts have embraced two analytical frameworks for such inquiries: 1) the "categorical approach" and its derivative, the "modified categorical approach," and 2) the "circumstance-specific approach" (also known as the "noncategorical approach").  See Descamps v. United States, 133 S. Ct. 2276, 2281 (2013); Nijhawan v. Holder, 557 U.S. 29, 34 (2009).

The categorical approach focuses solely on the relevant offenses' elements, comparing the elements of the prior offense of conviction with the elements of the pertinent federal offense, also referred to as the "generic" offense.  United States v. Price, 777 F.3d 700, 704 (4th Cir.), cert. denied, 135 S. Ct. 2911 (2015).  If the elements of the prior offense "are the same as, or narrower than," the offense listed in the federal statute, there is a categorical match.  Descamps, 133 S. Ct. at 2281.  But if the elements of the prior conviction "sweep[] more broadly," id. at 2283, such that there is a "realistic probability" that the statute of the offense of prior conviction encompasses conduct outside of the offense enumerated in the federal statute, the prior offense is not a match, Price, 777 F.3d at 704 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

The modified categorical approach serves as a "tool for implementing the categorical approach" where the defendant's

prior conviction is for violating a "divisible" statute—that is, a statute that "sets out one or more elements of the offense in the alternative." Descamps, 133 S. Ct. at 2281, 2284–85. The modified categorical approach permits the court to consult a limited menu of so-called Shepard documents, such as the indictment, the plea agreement, and jury instructions, to "determine which alternative formed the basis of the defendant's prior conviction." Id. at 2281; see also id. at 2283–85 (citing Shepard v. United States, 544 U.S. 13 (2005)). Once the elements of the offense of conviction have been identified, the examination of any Shepard documents ends, and the court proceeds with employing the categorical approach, comparing the elements of the offense of conviction with the elements of the offense identified in the federal statute. Id. at 2281.

In contrast to the categorical and modified categorical approaches, the circumstance-specific approach focuses on the circumstances underlying the defendant's prior conviction, not the offense's elements. Price, 777 F.3d at 705. "In utilizing the circumstance-specific approach, the reviewing court may consider reliable evidence concerning whether the prior offense involved conduct or circumstances that are required by the federal statute." Id.

C.

The Tenth Circuit recently considered which approach best fits the portion of the tier III definition found in Section 16911(4)(A)—the precise question before us here—and held that "Congress intended courts to look to the actual age of the defendant's victim, but to otherwise employ a [categorical] approach." United States v. White, 782 F.3d 1118, 1133, 1135 (10th Cir. 2015). We agree.

Like the Tenth Circuit, and as with any statutory interpretation, we begin by analyzing SORNA's text. Generally, when a federal statute refers to a generic offense, the text evidences Congress's intent that the categorical approach be applied. See Nijhawan, 557 U.S. at 34–35; see also Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013). However, when the statute refers to specific conduct or a factual circumstance, its text suggests Congress's intent to allow for the circumstance-specific approach. Nijhawan, 557 U.S. at 34, 37–38; Price 777 F.3d at 705.

Here, Section 16911(4) defines a "tier III sex offender," in relevant part, as:

> [an] offender whose offense is punishable by imprisonment for more than 1 year and—
>
> > (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:

> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
>
> (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years.

42 U.S.C. § 16911(4)(A). Thus, a defendant cannot be classified as a tier III sex offender under Section 16911(4)(A) unless the prior sex offense conviction is "comparable to or more severe than" aggravated sexual abuse, sexual abuse, or abusive sexual contact as the offenses are "described in" Sections 2241, 2242, and 2244 of the Criminal Code. Id. § 16911(4)(A)(i)-(ii).

As the Tenth Circuit recently noted in White, "a reference to a corresponding section of the [C]riminal [C]ode" like here "strongly suggests a generic intent." 782 F.3d at 1132. In Nijhawan v. Holder, for example, the Supreme Court analyzed subsections of an "aggravated felony" provision, 8 U.S.C. § 1101(a)(43), which similarly cross-references "'offense[s] described in' a particular section of the Federal Criminal Code." 557 U.S. at 37 (citation omitted). According to the Supreme Court, such language "must refer to generic crimes." Id. (emphasis added). SORNA's text therefore suggests that the categorical approach should be used to determine whether a prior conviction is comparable to or more severe than the generic crimes listed in Section 16911(4)(A).

10

Nonetheless, we must also consider the language in Section 16911(4)(A)(ii) stating that a defendant is a tier III sex offender if his prior conviction is comparable to or more severe than abusive sexual contact "against a minor who has not attained the age of 13 years." 42 U.S.C. § 16911(4)(A)(ii) (emphasis added). The definition of abusive sexual contact encompasses a number of alternative elements. See 18 U.S.C. § 2244. However, it does not include an element specifying a victim "who has not attained the age of 13 years." 42 U.S.C. § 16911(4)(A)(ii); see 18 U.S.C. § 2244. Congress's decision to reference in SORNA a victim "who has not attained the age of 13 years," 42 U.S.C. § 16911(4)(A)(ii), must therefore be read as an instruction to courts to consider the specific circumstance of a victim's age, rather than simply applying the categorical approach.

The language used to define a tier II sex offender also supports the conclusion that Congress intended courts to use a categorical approach when the sex offender tier definition references a generic offense, with the exception of the specific circumstance regarding the victim's age. White, 782 F.3d at 1133–34. Section 16911(3)(A) indicates that a defendant is a tier II sex offender if he has committed an offense that is "comparable to or more severe than" a list of generic crimes cross-referenced in the Criminal Code. See 42 U.S.C.

11

§ 16911(3)(A)(i)–(iv) (listing the offenses of sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, and abusive sexual contact "as described in" Sections 1591, 2422(b), 2423(a), and 2244 respectively). However, Section 16911(3)(A) qualifies that such a generic offense reaches tier II status only when committed "against a minor," i.e., "an individual who has not attained the age of 18 years." Id. § 16911(3)(A), (14) (emphasis added). Thus, the language of Section 16911(3)(A), like the language of Section 16911(4)(A), instructs courts to apply the categorical approach when comparing prior convictions with the generic offenses listed except when it comes to the specific circumstance of the victims' ages. White, 782 F.3d at 1134; see also United States v. Mi Kyung Byun, 539 F.3d 982, 991 (9th Cir. 2008).

In sum, an examination of 42 U.S.C. § 16911(4)(A)'s text and structure leads us to the same conclusion the Tenth Circuit reached in White: "Congress intended courts to apply a categorical approach to sex offender tier classifications designated by reference to a specific federal criminal statute,

12

but to employ a circumstance-specific comparison for the limited purpose of determining the victim's age." 782 F.3d at 1135.[2]

Our approach to Section 16911(4)(A) also accords with the Supreme Court's instructions that courts account for practical considerations when determining whether to employ the categorical or circumstance-specific approach.[3] The Supreme Court has noted that the circumstance-specific approach can create "daunting difficulties" for sentencing courts, tasking them with examining evidence to understand the specific circumstances of past convictions. Descamps, 133 S. Ct. at 2289

_____

[2] The portions of the tier III definition found in 42 U.S.C. § 16911(4)(B) and (C) are irrelevant to this case. We therefore do not address them here.

[3] The Supreme Court has identified additional factors, including legislative history, equitable considerations, and Sixth Amendment implications, relevant to the determination of whether to apply the categorical or circumstance-specific approach. See Descamps, 133 S. Ct. at 2287–89. Because the text and structure of Section 16911(4)(A) clearly evidence Congress's intent, we need not address these additional factors in our analysis, as none would change the result here. We note, however, that two of these factors—legislative history and equitable considerations—lend particularly strong additional support to our conclusion that the categorical approach should apply with the exception that we look to the specific circumstance of a victim's age. See White, 782 F.3d at 1134–35 (discussing SORNA's legislative history); see also Descamps, 133 S. Ct. at 2289 (explaining the potential unfairness of the circumstance-specific approach in the context of prior conviction sentencing enhancements, as it may allow for consideration of factual allegations from past convictions that the defendant had little incentive to challenge at trial or deprive the defendant of the benefits of a negotiated plea deal).

(internal quotation marks omitted).  Such examinations could require the review of aged documents, "[t]he meaning of [which] will often be uncertain," and "statements of fact . . . [that are] downright wrong."  Id.  A defendant may contest much of this, raising the possibility of "minitrials" wherein past convictions are re-litigated.  Moncrieffe, 133 S. Ct. at 1690; see Taylor v. United States, 495 U.S. 575, 601–02 (1990).

Applying the categorical approach to the generic crimes listed in SORNA's tier III definition will avoid such practical difficulties.  And looking to the circumstances of prior convictions for the limited purpose of identifying the age of the victim raises less concern.  Determining age is a "straightforward and objective" inquiry that "involves the inspection of a single threshold fact."  Hernandez-Zavala v. Lynch, 806 F.3d 259, 267 (4th Cir. 2015).

The government nevertheless contends that we should employ the circumstance-specific approach wholesale, relying primarily on our recent United States v. Price decision.  True, we there employed the circumstance-specific approach—but to a different, and differently-worded, SORNA subsection.  777 F.3d 700.  In Price, we had to decide which approach to employ in assessing whether a defendant's prior conviction qualified as a "sex offense" under Section 16911(7)(I).  Id. at 707–09.  That term includes "[a]ny conduct that by its nature is a sex offense

14

against a minor." 42 U.S.C. § 16911(7)(I) (emphasis added). Examining this language, we found that the "explicit reference to the 'conduct' underlying a prior offense, as well as the 'nature' of that conduct, refers to how an offense was committed—not a generic offense." Price, 777 F.3d at 709. As explained above, the relevant statutory language—and the conclusions we must draw from it—differ markedly here.

We also reject the government's contention that practical considerations weigh in favor of adopting a circumstance-specific approach wholesale. According to the government, considering the specific circumstances to determine tier classifications should be unproblematic after Price, since the factfinder must already consider the specific circumstances to determine whether a defendant has committed a "sex offense." While perhaps true in some cases, that assertion may well be untrue in many others, like here, where it is uncontested that Defendant's prior conviction constitutes a sex offense.

Moreover, Price held only that the circumstance-specific approach is applicable to determinations with respect to 42 U.S.C. § 16911(7)(I). 777 F.3d at 709. Subsection (7)(I) is but one of several subsections comprising SORNA's definition of the term "sex offense." See 42 U.S.C. § 16911(5)(A)–(C), (7)(A)–(I). The Court acknowledged in Price that the language of at least one other subsection included in the sex offense

15

definition calls for an elements-based, categorical approach. See 777 F.3d at 708. Thus, in some cases, one can and should determine whether a defendant was convicted of a sex offense without looking at the factual circumstances of the prior offense.

D.

Having determined that we apply the categorical approach in assessing whether a defendant's prior conviction constitutes a tier III sex offense under Section 16911(4)(A), with the exception that we look to the specific circumstance of the victim's age, we now apply this approach to Defendant's case. And, doing so, we conclude that the district court erred in deeming Defendant a tier III sex offender.

As we already noted, in 2002 Defendant pled guilty to endangering the welfare of a child in violation of N.J. Stat. Ann. § 2C:24-4(a). At that time, the statute stated:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, **or** who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and P.L.1974, c. 119, s.1 (C.9:6-8.21) is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

N.J. Stat. Ann. § 2C:24-4(a) (2002) (emphasis added).

16

Because the statute provided alternative elements that could constitute child endangerment—"engag[ing] in sexual conduct" or "caus[ing] . . . harm"—the statute is divisible. Id.; see Omargharib v. Holder, 775 F.3d 192, 198 (4th Cir. 2014) ("[C]rimes are divisible . . . if they set out elements in the alternative and thus create multiple versions of the crime." (internal quotation marks omitted)). Generally, therefore, we would use the modified categorical approach to determine the elements of Defendant's child endangerment conviction. See Descamps, 133 S. Ct. at 2281.

Here, however, there is no need to do so—because regardless of whether Defendant's New Jersey conviction was based on "sexual conduct which would impair or debauch the morals of [a] child" or "harm that would make [a] child . . . abused or neglected," N.J. Stat. Ann. § 2C:24-4(a) (2002), neither alternative would qualify as a tier III sex offense.

The only subsection of relevance to Defendant's potential tier III classification is subsection (4)(A), which identifies the generic crimes of aggravated sexual abuse, sexual abuse, and abusive sexual contact defined in the Criminal Code. 42 U.S.C. § 16911(4)(A). And all three—aggravated sexual abuse, sexual abuse, and abusive sexual contact—require a defendant to have engaged in or attempted physical contact.

17

Specifically, aggravated sexual abuse and sexual abuse require an actual or attempted sexual act, 18 U.S.C. §§ 2241, 2242, which, in turn, involves physical contact, see id. § 2246(2) (defining sexual act to include contact between genitals, contact between the mouth and genitals, penetration of genitals with a hand or object with a specific intent, or intentional touching of a person under the age of sixteen with a specific intent). Similarly, the offense of abusive sexual contact requires physical contact. See id. § 2244 (defining "abusive sexual contact"); id. § 2246(3) (defining "sexual contact" as "intentional touching" with a specific intent).

The New Jersey Supreme Court has, however, made clear that actual or even attempted physical contact is not necessary for conviction under the child endangerment statute at issue here. For example, the New Jersey Supreme Court held in 2001 that "mere nudity repeatedly presented at a window can constitute endangering the welfare of children if the other elements of the endangering crime are met." State v. Hackett, 764 A.2d 421, 428 (N.J. 2001). The statute's first alternative, "sexual conduct which would impair or debauch the morals of [a] child," N.J. Stat. Ann. § 2C:24-4(a) (2002), thus does not qualify for tier III classification, see United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) ("To the extent that the statutory definition of the prior offense has been interpreted

18

by the state's highest court, that interpretation constrains our analysis of the elements of state law.").

Nor is physical contact necessary to "cause[] [a] child harm that would make the child an abused or neglected child"—the statute's second alternative. N.J. Stat. Ann. § 2C:24-4(a) (2002). For example, one could cause such harm by "willfully failing to provide proper and sufficient food." See id. § 9:6-1.

In sum, the New Jersey child endangerment statute under which Defendant was convicted, N.J. Stat. Ann. § 2C:24-4(a) (2002), can encompass conduct, such as repeated nudity and willing failure to provide proper food, that clearly falls outside of the generic crimes of aggravated sexual abuse, sexual abuse, and abusive sexual contact, all of which require actual or attempted physical contact. And because the New Jersey statute sweeps more broadly than the generic crimes listed in 42 U.S.C. § 16911(4)(A), Defendant's New Jersey conviction is not "comparable to or more severe than" those crimes. 42 U.S.C. § 16911(4)(A); see Descamps, 133 S. Ct. at 2283. Accordingly, Defendant cannot properly be classified as a tier III offender, and the district court thus erred in so classifying him. Because that error led to an improper calculation of Defendant's base offense level under the Sentencing Guidelines, Defendant's sentence is procedurally unreasonable and must be vacated. See,

19

e.g., United States v. Clay, 627 F.3d 959, 964, 970 (4th Cir. 2010).[4]

### III.

For the reasons above, the district court erred in classifying Defendant as a tier III sex offender. We therefore vacate Defendant's sentence and remand for the district court to determine Defendant's proper tier classification (i.e., I or II), calculate the corresponding Sentencing Guidelines range, and impose a sentence.

VACATED AND REMANDED

---

[4] We summarily reject Defendant's argument that the Court should defer to New Jersey's classification of him as a tier II offender. The Guidelines make clear that a defendant's base offense level for violation of 18 U.S.C. § 2250 is determined by the defendant's tier classification under SORNA. U.S.S.G. § 2A3.5 cmt. And even a cursory review of New Jersey's sex offender tier system reveals that it is grounded in criteria distinct from SORNA's tier definitions. See, e.g., N.J. Stat. Ann. § 2C:7-8.