**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4663**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ANTHONY DALE HELTON,

       Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, Chief District Judge. (3:18-cr-00016-GMG)

Argued: September 20, 2019             Decided: December 3, 2019

Before AGEE, FLOYD, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee joined. Judge Floyd wrote a dissenting opinion.

**ARGUED:** Nicholas Joseph Compton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. Lara Kay Omps-Botteicher, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Kristen M. Leddy, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

We address for the first time whether a conviction under South Carolina's voyeurism[1] statute constitutes a "sex offense" requiring registration under the Sexual Offender Registration Act ("SORNA"). Arguing it does not, Helton moved to dismiss the indictment alleging that he failed to register as a sex offender under SORNA. The district court denied Helton's motion, holding that a conviction under South Carolina's voyeurism statute constitutes a sex offense requiring registration under SORNA.

On appeal, our central question is whether a conviction under the statute constitutes "a criminal offense that has an element involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i). The answer to that question turns on the definitions of "sexual act" and "sexual contact," which are not provided by SORNA. Helton argues we should use the definitions of those terms found in 18 U.S.C. § 2246, a different federal statute. Under § 2246, "sexual act" and "sexual contact" require physical contact with another. Helton argues that since the South Carolina voyeurism statute does not require

---

[1] Without intending to make light of the serious issues posed by SORNA and this case, a brief digression into the origins of voyeurism statutes provides some historical context. Statutory prohibitions of voyeurism are often colloquially called "Peeping Tom" statutes. The term "Peeping Tom" dates to the legend of Lady Godiva, an English noblewoman whose husband, the Earl of Merica, levied oppressive taxes on the people of Coventry, England. After Lady Godiva took pity on the townspeople, and her husband rebuffed her initial pleas to lift the taxes, she agreed to ride unclothed on horseback through the streets of Coventry if he would grant them relief. According to the legend, a proclamation was issued to the town, which required the people to stay indoors and shut their windows to give her absolute privacy. As she rode through town, covered only by her long hair, a tailor, now known as "Peeping Tom," disobeyed the proclamation by watching her pass by.

such physical contact, it is not a criminal offense involving a "sexual act" or "sexual contact."

But accepting Helton's argument would require us to rewrite SORNA. Although Congress could have easily drafted SORNA to limit "sexual act" and "sexual contact" to conduct involving physical contact with another, it did not, leaving those terms undefined. Keeping with our previous decisions, we decline to apply the § 2246 definitions of "sexual act" and "sexual contact" outside of their place in Title 18 Chapter 109A, in the absence of statutory language to do so. Instead, we define SORNA's use of these terms in accordance with their ordinary meaning. In doing so, it becomes clear that a violation of the voyeurism statute—which does not require physical contact, but does require the voyeuristic act to be in furtherance of "arousing or gratifying sexual desire"—is a criminal offense involving a "sexual act" or "sexual contact" that requires registration under SORNA.

For these reasons, and as more fully described below, we affirm the district court and conclude that a conviction under South Carolina's voyeurism statute constitutes a sex offense requiring registration under SORNA.

I.

A.

Before reviewing the facts of this case, we begin with an overview of SORNA. Congress enacted SORNA "[i]n order to protect the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders." 34 U.S.C. § 20901. This system requires those designated

as a "sex offender" under SORNA to register and keep current their sex offender status in each jurisdiction where they reside, are employees or are enrolled as students. 34 U.S.C. § 20913. A defendant violates 18 U.S.C. § 2250(a) if he (1) is a sex offender required to register under SORNA, (2) travels in interstate commerce and (3) knowingly fails to register or update his registration as required by SORNA.

SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). To define "sex offense," SORNA identifies five categories of conduct:

(i) a criminal offense that has an element involving a sexual act or sexual contact with another;
(ii) a criminal offense that is a specified offense against a minor;
(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18;
(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note); or
(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

34 U.S.C. § 20911(5)(A)(i)–(v). Any conduct that falls within one of these five categories, and does not trigger one of the two narrow exceptions in § 20911(5)(B)–(C), constitutes a "sex offense" under SORNA.

B.

Against this backdrop, we turn to the facts of this appeal. In 2012, Helton pled guilty to voyeurism in violation of S.C. Code § 16-17-470(B). He was sentenced to three years of incarceration, with credit for time served and one year of probation. In addition, S.C. Code § 23-3-430 required Helton to register as a sex offender in South Carolina. Following

his release from prison, Helton moved to Virginia but later relocated to West Virginia. In both states, Helton registered as a sex offender under the applicable state laws.

However, when the West Virginia State Police later attempted to verify Helton's address, they discovered that he no longer occupied his last known West Virginia residence and was not registered as a sex offender in any other state. They soon determined that Helton had moved to Rockingham County, Virginia without updating his registration in West Virginia or re-registering in Virginia. Helton was subsequently arrested by the Rockingham County Sheriff's Department for failing to update his registration in West Virginia.

A federal grand jury in West Virginia indicted Helton for failing to register and update his registration as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a). The indictment alleged that Helton was a sex offender under SORNA because his voyeurism conviction in South Carolina qualified as a sex offense.

Helton moved to dismiss the indictment. He argued that because his South Carolina voyeurism conviction did not feature an element involving a "sexual act" or "sexual contact," his conviction did not fall within SORNA's definition of "sex offense." 34 U.S.C. § 20911(5)(A). Helton argued the definitions of "sexual act" and "sexual contact" from 18 U.S.C. § 2246, which require physical contact with another, should be used to define those terms under SORNA. He then argued that since South Carolina's voyeurism statute does not require physical contact with another, violating it does not constitute a sex offense requiring SORNA registration.

5

The district court rejected this argument. Instead, the court interpreted "sexual act" and "sexual contact" in accordance with their ordinary meaning, and held that the South Carolina statute's requirement that the voyeuristic act be committed "for the purpose of arousing or gratifying sexual desire" was the element of the offense that involved a sexual act. Accordingly, the district court held that a conviction under South Carolina's voyeurism statute is a sex offense that required Helton to register as a sex offender under SORNA. Based on that conclusion, the court denied Helton's motion to dismiss the indictment. Helton entered a conditional guilty plea, reserving the right to appeal the denial of his motion to dismiss. Helton timely appealed following his sentencing.[2]

II.

A.

Since Helton pled guilty to violating South Carolina's voyeurism statute, we must determine whether a violation of that statute is a "sex offense" under SORNA. To answer that question, we first must decide what analytical framework to apply. The Supreme Court has provided three potential frameworks for us to consider: the "categorical approach," the "modified categorical approach" and the "circumstance-specific approach." *United States v. Price*, 777 F.3d 700, 704 (4th Cir. 2015). The district court held, and the parties agreed at oral argument, that the categorical approach should be applied to determine if Helton's

_____

[2] Where, as here, a district court's denial of a motion to dismiss an indictment depends solely on a question of law, we review the denial de novo. *United States v. Bridges*, 741 F.3d 464, 467 (4th Cir. 2014).

South Carolina voyeurism conviction meets the SORNA definition of "sex offense." We agree that, under our precedent, applying the categorical approach is appropriate to resolve Helton's case. *See Price*, 777 F. 3d at 708; *United States v. Faulls*, 821 F.3d 502, 512 (4th Cir. 2016); *United States v. Berry*, 814 F.3d 192, 195–96 (4th Cir. 2016).

Under the categorical approach, we look to the statutory definition of the state crime to determine whether the criminalized conduct falls within the definition of "sex offense" under SORNA. *See United States v. Battle*, 927 F.3d 160, 164 (4th Cir. 2019). In doing so, we are "bound by the interpretation of such offense articulated by that state's courts." *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017). This analysis "focus[es] on the minimum conduct required to sustain a conviction for the state crime," *United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016) (internal quotation marks omitted), but such conduct "must give rise to a 'realistic probability, not a theoretical probability' that a state would apply the law and uphold a conviction based on such conduct." *Battle*, 927 F.3d at 165 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). We must find that the elements of the statute of conviction are "the same as, or narrower than, those of the generic offense in order to find a categorical match." *Price*, 777 F.3d at 704.

B.

With our analytical framework determined, we now analyze whether a South Carolina voyeurism conviction is a "sex offense" under SORNA. In doing so, we ask whether the minimum conduct required to violate the voyeurism statute is the same as, or narrower than, the minimum conduct required by SORNA's definition of "sex offense." If

it is, the district court did not err in denying the motion. If it is not, Helton's motion to dismiss should have been granted.

The parties and the district court agree that § 20911(5)(A)(i) is the relevant SORNA sex offense category to Helton's case. That subsection defines "sex offense" as "a criminal offense that has an element involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i). Therefore, to decide if a conviction under the South Carolina voyeurism statute constitutes a "sex offense" under SORNA, we must answer the central question of this appeal: whether the voyeurism statute "has an element involving a sexual act or sexual contact with another." *Id.* Making this question more difficult is the fact that neither "sexual act" nor "sexual contact" are defined in SORNA.

Although SORNA does not define "sexual act" or "sexual contact," Congress expressly delegated authority to the Attorney General to "issue guidelines and regulations to interpret and implement" SORNA. 34 U.S.C. § 20912(b). Pursuant to this authority, the Attorney General promulgated the National Guidelines for Sex Offender Registration and Notification ("SMART Guidelines"), 73 Fed. Reg. 38,030 (July 2, 2008). As we have stated, "[t]hese Guidelines 'can and do have the force and effect of law.'" *United States v. Bridges*, 741 F.3d 464, 468 (4th Cir. 2014).

Section IV of the SMART Guidelines explains that a "sex offense" under § 20911 of SORNA "encompasses a broad range of offenses of a sexual nature under the law of any

8

jurisdiction . . . ." 73 Fed. Reg. 38,050.[3] The section then describes the offenses that constitute a "sexual act" or "sexual contact" under § 20911(5)(A)(i), the relevant category to Helton's case. In addressing that subsection, the SMART Guidelines state:

> The offenses covered by this clause should be understood to include all sexual offenses whose elements involve: (i) Any type or degree of genital, oral, or anal penetration, or (ii) any sexual touching of or contact with a person's body, either directly or through the clothing. *Cf.* 18 U.S.C. 2246(2)–(3) (federal law definitions of sexual act and sexual contact).

73 Fed. Reg. 38,051. In addition, the SMART Guidelines note that among the only offenses explicitly excluded from the § 20911 "sex offense" categories are those "involving consensual sexual conduct between adults, and offenses involving consensual sexual conduct with minors at least 13 years old where the offender is not more than four years older." *See* 73 Fed. Reg. 38,037.

1.

Largely repeating his arguments below, Helton contends a violation of the South Carolina voyeurism statute does not require a sexual act or sexual contact under SORNA. He claims that while "sexual act" and "sexual contact" are not defined in 34 U.S.C. § 20911(5)(A)(i), those terms are defined in 18 U.S.C. § 2246(2)–(3), which provide the definitions for 18 U.S.C. Chapter 109A "Sexual Abuse" offenses. The definitions in § 2246(2)–(3) require physical contact with another. *See* 18 U.S.C. § 2246(2)–(3). Helton argues "sexual act" and "sexual contact" must be narrowly read to incorporate the

---

[3] However, an earlier section of the SMART Guidelines also cautions that the term "sex offense" does not "refer to any and all crimes of a sexual nature," but only to those covered by the five categories in § 20911(5)(A). 73 Fed. Reg. 38,045.

definitions from § 2246 and exclude all offenses falling outside their scope. Applying Helton's narrow reading, South Carolina's voyeurism offense does not, under the categorical approach, fall within the definitions of "sexual act" or "sexual contact" because it does not require physical contact with another.

Helton claims that the SMART Guidelines support his narrow interpretation of "sexual act" and "sexual contact." He asserts that because the SMART Guidelines expressly reference forms of physical contact with another—and cite the § 2246 definitions, which require physical contact with another—any sex offense under § 20911(5)(A)(i) must also involve such physical contact. Since South Carolina's voyeurism statute can be violated without any form of physical contact, Helton argues that it cannot, under the categorical approach, fall within the § 20911(5)(A)(i) definition of "sex offense" under SORNA.

2.

We disagree. To explain, we begin, as we must, with the relevant statutory text. *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). Even though Congress had the opportunity, it did not incorporate the § 2246 definitions into § 20911(5)(A)(i). Congress knew how to do so, as it explicitly named the Title 18 Chapter 109A "Sex Abuse" offenses—which use the § 2246 definitions of "sexual act" and "sexual contact"—among the federal crimes that expressly constitute a "sex offense" under § 20911(5)(A)(iii). In contrast, Congress did not incorporate Chapter 109A or the § 2246 definitions into § 20911(5)(A)(i). Therefore, interpreting § 20911(5)(A)(i) to only comprise of offenses with elements falling within the

10

§ 2246 definitions would effectively rewrite § 20911(5)(A)(i) to impose a limitation that Congress did not make.[4]

Rewriting § 20911(5)(A)(i) to impose such a limitation would also require us to depart from a core principle of statutory interpretation. This principle, which is based on the separation of powers, counsels restraint in order to "maintain[] a set of statutes that reflect, rather than distort, the policy choices that elected representatives have made." *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998); *In re Brown*, 932 F.3d 162, 170 (4th Cir. 2019). Giving terms their plain meaning, when not statutorily defined, helps "to minimize disagreement between the branches by preserving congressional enactments" as written and avoids causing "friction by creating (though the power of precedent) statutes foreign to those Congress intended." *Almendarez-Torres*, 523 U.S. at 238. Even if Congress' failure to reference the § 2246 definitions of "sexual act" and "sexual contact" in § 20911(5)(A)(i) resulted from less-than-meticulous drafting and not a conscious policy decision, we may not displace the plain meaning of the statutory text. Helton's reading invites us to rewrite the statute based on speculation as to Congress' intent. That is not the proper role for this Court.

Helton's interpretation of § 20911(5)(A)(i) is also at odds with the text of the pertinent SMART Guidelines. The SMART Guidelines state that the definition of "sex

---

[4] Similarly, this Court and many of our sister circuits have declined to incorporate the Chapter 109A definition of "sexual abuse" into other parts of the U.S. Code which leave the term undefined, choosing instead to give the term its ordinary meaning. *See, e.g., United States v. Hubbard*, 480 F.3d 341 (5th Cir. 2007); *United States v. Mateen*, 806 F.3d 857 (6th Cir. 2015); *United States v. Colson*, 683 F.3d 507 (4th Cir. 2012); *United States v. Sinerius*, 504 F.3d 737 (9th Cir. 2007).

offense" under § 20911(5)(A)(i)—"a criminal offense that has an element involving a sexual act or sexual contact with another"—"should be understood *to include* all offenses whose elements involve: (i) Any type or degree of genital, oral, or anal penetration, or (ii) any sexual touching of or contact with a person's body, either directly or through the clothing." 73 Fed. Reg. 38,051 (emphasis added).

The phrase "to include" is critical. Both the Supreme Court and this Court have held that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019) (quoting *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941)). In fact, "[w]hen 'include' is utilized in a statute, it is generally improper to conclude that entities not specifically enumerated are excluded." *Hawley*, 919 F.3d at 256 (quoting *Jones v. Am. Postal Workers Union*, 192 F3d. 417, 426 (4th Cir. 1999)); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012) ("The verb *to include* introduces examples, not an exhaustive list."); *Include*, Black's Law Dictionary (8th ed. 2004) ("To contain as part of something. The participle *including* typically indicates a partial list . . . some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing.") (emphasis original). Because "include" and its variations are "more often than not the introductory term for an incomplete list of examples," *Adams v. Dole*, 927 F.2d 771, 776

12

(4th Cir. 1991), their use before a list is afforded a presumption of nonexclusively in statutory interpretation. *See* Scalia & Garner at 132–33.[5]

Applying this precedent and other persuasive authority, we read the conduct described in the SMART Guidelines to impose a nonexclusive list. Like Congress in drafting the statute itself, the Attorney General could have easily written the SMART Guidelines to indicate that "sexual act" and "sexual contact" under § 20911(5)(A)(i) require physical contact with another.[6] For example, instead of "to include," the Attorney General could have used "to be limited to," "to mean," "to be defined as" or other similar language. If he had, Helton might have the better end of the argument. By instead using "to include," the Attorney General indicated the examples contained in the SMART

---

[5] In contrast, when a statutory definition states, for example, that a word "means" something, this clearly denotes that this is the word's *only* meaning. *See Helvering v. Morgan's Inc.*, 293 U.S. 121, 125 n.1 (1934) ("The natural distinction would be that where 'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particulars are those specified in the definition.").

[6] The manner in which the SMART Guidelines cite § 2246 actually cuts against Helton's argument that physical contact with another is required under § 20911(5)(A)(i). While Helton contends that the SMART Guidelines' reference to § 2246(2)–(3) indicates that the contact required under § 20911(5)(A)(i) is "comparable and similar" to the conduct listed in § 2246 (Appellant's Supp. Br. at 3), this ignores, among other things, the SMART Guidelines' use of the "*Cf.*" signal in the citation. This signal is generally understood to precede a citation offering a proposition that is analogous *but different* to the one being made by the author. *See The Bluebook: A Uniform System of Citation* R.1.2(a), at 59 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015). This shows that the Attorney General chose not to define "sexual act" and "sexual contact" under SORNA as those terms are defined under § 2246.

Guidelines are non-exclusive. Our job is to follow the actual language of the SMART Guidelines, not construe an interpretation inconsistent with the text.

Notably, this conclusion is consistent with our decision in *United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012). There, the term "sexual activity" was left undefined in 18 U.S.C. § 2422. Fugit, like Helton here, urged this Court to incorporate the § 2246 definition of "sexual act" as its meaning. *See id.* at 255. We rejected Fugit's argument holding, "we find 'no indication that Congress intended to import the definitions of chapter 109A to [another] chapter.'" (quoting *United States v. Sonnenber*g, 556 F.3d 667, 670 (8th Cir. 2009)). Our decision relied on not only the text of § 2422 but also the text of § 2246. Specifically, we noted that "[s]ection § 2246 explicitly limits the definitions provided therein to the chapter in which it resides" because "the very first words of the section are '[a]s used in this chapter' (with various definitions following), and the section's title is '[d]efinitions for chapter.'" *Fugit*, 703 F.3d at 256. We continue to find this reasoning compelling and apply it here.

In short, Helton's argument requires the definitions of "sexual act" and "sexual contact" to involve physical contact with another. But neither Congress in drafting § 20911(5)(A)(i), nor the Attorney General in promulgating the SMART Guidelines, chose to include language imposing such a limitation. Therefore, we decline to do so here.

3.

Since "sexual act" and "sexual contact" are not defined by the text of SORNA or Section IV of the SMART Guidelines, we look to their ordinary meaning. *See Cloer*, 569 U.S. at 376 (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)) ("'[u]nless

14

otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'"). In doing this, we note that the plain text of the South Carolina voyeurism statute does not require any form of physical contact. Therefore, like the district court, we focus our analysis on whether the South Carolina voyeurism statute has an element involving a "sexual act" rather than "sexual contact."

Following our practice, we look to dictionaries of common usage to discern the ordinary meaning of "sexual act." *See Fugit*, 703 F.3d at 254. Black's Law Dictionary defines an "act" as "[s]omething done or performed, esp. voluntarily; a deed" and "[t]he process of doing or performing; an occurrence that results from a person's will being exerted on the external world." *Act*, Black's Law Dictionary (8th ed. 2004). While Black's Law Dictionary does not define "sexual," Webster defines it as, "of or relating to the sphere of behavior associated with libidinal gratification." *Webster's New International Dictionary* 2082 (3d ed. 1993); *see also Fugit*, 703 F. 3d at 254 (using this definition of "sexual" to define the statutory term "sexual activity"); *United States v. Diaz-Ibarra*, 522 F. 3d 343, 349 (4th Cir. 2008) (using this definition of "sexual" to define the statutory term "sexual abuse"). These definitions indicate that, as a matter of ordinary meaning, a "sexual act" is a something done voluntarily that relates to sexual desire or gratification.

4.

Using the ordinary meaning of "sexual act," we now evaluate whether the South Carolina voyeurism statute can be violated without voluntarily doing something that relates to sexual desire or gratification. The text of the statute indicates that it cannot. A person commits voyeurism under the South Carolina statute "if, for the purpose of arousing or

15

gratifying sexual desire of any person, he or she knowingly views . . . another person, without that person's knowledge and consent, while the person is in a place where he or she would have a reasonable expectation of privacy." S.C. Code § 16-17-470(B). Knowingly viewing another person without that person's consent qualifies as a voluntary "act." Further, the requirement that this viewing be done "for the purpose of arousing or gratifying sexual desire of any person," associates the viewing with sexual desire and gratification. Thus, a violation of the South Carolina voyeurism statute is a "sexual act" under the ordinary meaning of the term. Accordingly, the minimum conduct required for one to be convicted under the South Carolina voyeurism statue falls within the § 20911(5)(A)(i) definition of "sexual act."[7]

5.

Our dissenting colleague disapproves of our definition of a "sexual act." He argues that it sweeps too broadly because it covers "any crime committed with a sexual intent." *Post* at 25. However, it is broad because Congress constructed the phrase "sexual act" out of two broad terms without limiting or defining them. If the ordinary meaning of the phrase is broader than Congress intended, Congress can narrow its meaning with the stroke of a pen. But it is not our place to rewrite statutes based on how we divine Congress' intent.

---

[7] This conclusion is consistent with the way the voyeurism statute is treated by other sections of South Carolina law and with its interpretation by the state's courts. As the district court noted, an indictment under the voyeurism statute lists the charge as "sex/voyeurism," and S.C. Code § 23-3-430 requires those convicted of voyeurism to register as sex offenders.

Further, the alternative definition that our colleague suggests for "sexual act"—"something sexual that is voluntarily done," *post* at 19—is no less broad. It simply inserts the word "sexual" into the ordinary meaning of "act." *See Act*, Black's Law Dictionary (8th ed. 2004) (defining "act" as "[s]omething done . . . voluntarily."). For the dissent's definition of "sexual act" to be different from the ordinary meaning on which we rely, "sexual" would need to be defined as something other than "of or relating to the sphere of behavior associated with libidinal gratification." *Webster's New International Dictionary* 2082 (3d ed. 1993). But the dissent offers neither a different definition of "sexual" nor a source for it. Thus, we are left with an alternative definition of "sexual act" that—like six in one hand and a half dozen in the other—is a distinction without a difference. In the end, we respectfully suggest the dissent's beef should be with Congress, not with the majority.

## III.

For the reasons set forth above, we conclude that a conviction under South Carolina's voyeurism statute constitutes a "sexual act" within the § 20911(5)(A)(i) definition of a "sex offense." Helton was therefore required to register and keep current his registration as a sex offender under SORNA pursuant to 18 U.S.C. § 2250(a). The district court's denial of Helton's motion to dismiss was proper. The district court's judgment is

*AFFIRMED*.

17

FLOYD, Circuit Judge, dissenting:

I agree with my colleagues in the majority that we must apply the categorical approach to determine whether South Carolina voyeurism is "a criminal offense that has an element involving a *sexual act*," 34 U.S.C. § 20911(5)(A)(i) (emphasis added), thereby triggering a duty to register under SORNA. *See ante* at 6–15. I also agree that the SMART Guidelines do not provide us with an answer to that question. Although the Guidelines expressly reference forms of physical contact with another by citing to the definition of "sexual act" and "sexual contact" under the federal statute criminalizing sexual abuse, *see* 18 U.S.C. § 2246(2)–(3), they do not purport to provide an all-encompassing definition. Rather, as the majority points out, the Guidelines merely state that offenses covered by § 20911(5)(A)(i) should be understood to "include" all sexual offenses whose elements involve "[a]ny type or degree of genital, oral, or anal penetration" or "any sexual touching of or contact with a person's body, either directly or through the clothing." 73 Fed. Reg. 38,030, 38,051 (July 2, 2008) (citing 18 U.S.C. § 2246(2)–(3)). Because the Guidelines do not foreclose the possibility that "sexual act" includes a broader range of conduct than that proscribed in § 2246, we must look to the plain meaning of that term to determine its scope.

Where the majority and I begin to part ways, however, is in our understanding of the ordinary meaning of "sexual act." Looking to the dictionary definition of "sexual" and "act," my colleagues conclude that, "as a matter of ordinary meaning, a 'sexual act' is something done voluntarily that relates to sexual desire or gratification." *Ante* at 15. But in doing so, they read "sexual" as supplying the motivation for the act, as opposed to modifying the nature of the act itself. In other words, under the majority's definition, a

18

culpable state of mind transforms conduct that would otherwise not be sexual into a sexual act.

This reading draws too heavily on the meaning of the adjective "sexual" as opposed to the noun it modifies: "act," which is "something done . . . voluntarily." *Ante* at 15 (citing *Act*, Black's Law Dictionary (8th ed. 2004)); *accord American Heritage Dictionary of the English Language* 16 (4th ed. 2006) ("something done or performed"); *Merriam-Webster's Collegiate Dictionary* 1011 (11th ed. 2003) ("the doing of a thing"). Therefore, the plain meaning of "sexual act" is something sexual that is voluntarily done—not something voluntarily done for sexual purposes.

Critically, the two (non-SORNA) cases cited by the majority do not support its construction of "sexual act." To be sure, in *United States v. Fugit*, 703 F.3d 248, 254–55 (4th Cir. 2012), and *United States v. Diaz-Ibarra*, 522 F.3d 343, 348–50 (4th Cir. 2008), this Court adopted the same dictionary definition of "sexual" employed by the majority here—"of or relating to the sphere of behavior associated with libidinal gratification," *ante* at 15 (citing *Webster's New International Dictionary* 2082 (3d ed. 1993))—and ultimately held that "sexual activity" and "sexual abuse," respectively, were intent-centered phrases. But in both of these cases, the dictionary definition of the noun in question justified reading "sexual" to supply the motive.

Take *Fugit*, for example. There, we held that the plain meaning of "sexual activity" under 18 U.S.C. § 2422(b), which criminalizes enticing minors to engage in illegal sexual activity, "comprises conduct connected with the '*active pursuit* of libidinal gratification' on the part of any individual." *Fugit*, 703 F.3d at 255–56 (emphasis added). Yet we only

19

did so after observing that the most pertinent dictionary definition of "activity" was "an occupation, pursuit, or recreation in which a person is active." *Id.* at 255. Unlike "act," which is something done voluntarily, "pursuit"—and thus "activity"—at least implicitly refer to the *purpose* behind the act. *See Random House College Dictionary* 1074 (rev. ed. 1980) (defining "pursuit" as "the act of pursuing" and "an effort to secure or attain something"); *Merriam-Webster's Collegiate Dictionary* 1011 (defining "pursuing" as "to find or employ measures to obtain or accomplish; seek"); *American Heritage Dictionary of the English Language* 1423 (defining "pursuing" as "[t]o strive to gain or accomplish").[1]

The same can be said of the word "abuse," which we interpreted as part of the phrase "*sexual abuse* of a minor" in the Sentencing Guidelines' crime-of-violence provision in *Diaz-Ibarra* to mean "the use or misuse of a person for purposes of sexual gratification." 522 F.3d at 350; *see id.* at 349 (arriving at this definition only after consulting several dictionary definitions of the word "abuse," which revealed that "at the highest level of

---

[1] Furthermore, in *Fugit*, the Court also reasoned that its definition of "sexual activity" rendered the statutory scheme "coherent as a whole," given that § 2422(b) "was designed to protect children from the act of solicitation itself." 703 F.3d at 255 (internal quotation marks omitted). By forbidding the knowing persuasion, inducement, enticement, or coercion of a minor, we explained, the statute sought to punish "an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions concerning the actual consummation of sexual activities with the minor." *Id.* (internal quotation marks omitted); *see also id.* ("The primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children, and this evil can surely obtain in situations where the contemplated conduct does not involve interpersonal physical contact."). In the SORNA context, however, registration requirements are triggered by "sex offense" convictions, 34 U.S.C. §§ 20911(1), 20913(a), which are defined, among other ways, by reference to crimes that have an element involving a sexual act or sexual contact with another, 34 U.S.C. § 20911(5)(A)(i); in other words, the relevance of the offender's state of mind is not immediately apparent.

20

generality, 'abuse' means misuse or use for an incorrect or bad purpose"); *id.* at 350 ("However one styles it, 'sexual abuse' is an intent-centered phrase; the misuse of the child for sexual purposes *completes* the abusive act." (emphasis added)); *see also United States v. Alfaro*, 835 F.3d 470, 476–77 (4th Cir. 2016) ("The court in *Diaz–Ibarra* thus did not hold that the word 'sexual' must always and in all circumstances be defined to include an intent to gratify sexual urges; it held that an intent to gratify sexual urges is central to and therefore is part of the ordinary meaning of *the phrase* 'sexual abuse.'").

The foregoing differences between "sexual act," on the one hand, and "sexual activity" and "sexual abuse," on the other, require us to interpret those phrases differently. *See Alfaro*, 835 F.3d at 476; *cf. Yates v. United States*, 574 U.S. 528, 537 (2015) ("[I]dentical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute."). Despite the non-descript nature of the word "act," and the absence of any indicia of intent in its definition as "something voluntarily done," the majority allows a dictionary's broad definition of "sexual" as "of or relating to the sphere of behavior associated with libidinal gratification" to subsume the word "act" entirely.

Moreover, even if the adjective "sexual" could be plausibly read to modify "act" in this way, I disagree that the "*ordinary* meaning" of sexual act embraces any and all actions that are done with sexual gratification in mind, even if the act itself is not inherently sexual. *See Smith v. United States*, 508 U.S. 223, 241–42 (1993) (Scalia, J., dissenting) (noting that although dictionaries define the word "use" very broadly, there is "[a] distinction between how a word *can be* used and how it *ordinarily is* used"). The South Carolina voyeurism

21

statute illustrates why. Setting aside the requisite sexual purpose, all that is required to commit the act of voyeurism under the statute is "knowingly view[ing] . . . another person, without that person's knowledge and consent, while the person is in a place where he or she would have a reasonable expectation of privacy." S.C. Code Ann. § 16-17-470(B). There is no textual requirement that the act committed by the voyeur involve touching, viewing of nudity or private parts, or sexual conduct in any way, other than the subjective state in the voyeur's mind. Although the voyeurism statute requires that viewing be done with a sexual intent, the same act could be done without any sexual purpose, such as a burglar casing a victim's house. Given the clear delineation of acts (actus reus) and mental states (mens rea) within criminal law, I find this intent-driven interpretation of the word "act" particularly troubling.

In sum, though I agree with my colleagues in the majority to the extent they suggest that a common-sense definition of "sexual act" likely includes a broader range of conduct than that encompassed in § 2246, we need not decide just how broad that range of conduct is in order to resolve this case. That is because voyeurism, at least under South Carolina law, does not require *any* sexual act.

This conclusion is consistent with the SMART Guidelines, even if those Guidelines do not require us to adopt the definition of "sexual act" in § 2246 for the reasons already stated. By citing the definition of "sexual act" under § 2246 with a "*Cf.*" signal, the Guidelines suggest that the definition of "sexual act" under SORNA is at least analogous to one that requires interpersonal physical contact. *See* 73 Fed. Reg. at 38,051. Additionally, as the majority acknowledges, the Guidelines caution that "the term 'sex

22

offense' is not used to refer to any and all crimes of a sexual nature, but rather to those covered by the definition of 'sex offense' appearing in SORNA," 73 Fed. Reg. at 38,045, such as crimes that have an element involving a "sexual act," 34 U.S.C. § 20911(5)(A)(i). Yet it is difficult to imagine a crime of a sexual nature that is not captured by the majority's expansive definition of "sexual act."

Finally, the structure and purpose of the statute also convince me that in promulgating SORNA's registration requirements and criminal penalties, Congress did not intend "sexual act" to sweep so broadly. As discussed, under subsections 5(A)(i) and (5)(A)(ii), "sex offense" is defined to include "a criminal offense that has an element involving a sexual act or sexual contact with another," 34 U.S.C. § 20911(5)(A)(i), and "a criminal offense that is a specified offense against a minor," *id.* § 20911(5)(A)(ii); *see also id.* § 20911(7) (outlining specified offenses against minors for purposes of subsection 5(A)(ii)). But "sex offense" also is defined, in subsection 5(A)(iii), by reference to the following enumerated federal offenses: 18 U.S.C. § 1591 (sex trafficking of children or by force, fraud, or coercion); 18 U.S.C. §§ 2241–2245 (sexual abuse); 18 U.S.C. §§ 2251–2252c, 2260 (sexual exploitation and other abuse of children); 18 U.S.C. §§ 2421–2425 (transportation for illegal sexual activity and related crimes).[2]

---

[2] Specifically, subsection 5(A)(iii) defines "sex offense" as "a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18." 34 U.S.C. § 20911(5)(A)(iii).

Notably missing from this list of federal offenses is video voyeurism under 18 U.S.C. § 1801. Rather than list this statute as an enumerated offense under subsection (5)(A)(iii), Congress included it as a registerable offense in the more expansive[3] part of the statute outlining specified offenses against *minors*. *See* 34 U.S.C. § 20911(5)(A)(ii), (7)(F). Put another way, Congress knew how to incorporate 18 U.S.C. § 1801 into the definitional provision of SORNA, but chose not to do so in subsection (5)(A)(iii). That Congress felt it necessary to include video voyeurism among the specified offenses against a minor in subsection (7) also suggests that it did not think such conduct qualified as a crime that has an element involving a sexual act or contact with another under subsection (5)(A)(i). Thus, when § 20911 is read as a whole, the strong negative implication is that video voyeurism committed against *adults* is not a registrable offense.

This is important because the federal video voyeurism statute categorically requires conduct far more egregious than South Carolina's voyeurism statute, including filming the victim's private parts. *See* 18 U.S.C. § 1801.[4] Indeed, particularly in light of SORNA's

---

[3] *See generally United States v. Price*, 777 F.3d 700, 708–09 (4th Cir. 2015) ("Th[e] contrasting terminology indicates that Congress drafted subsections (5)(A)(ii) and (7) to cover a broader range of prior offenses than those reached by subsection (5)(A)(i). . . . Although subsection (5)(A)(i) includes certain prior offenses without regard to whether the victim was a child or an adult, subsections (5)(A)(ii) and (7) are applicable only where the victim was a minor. . . . In light of SORNA's focus on children, Congress's use of broader language in defining a 'sex offense' for victims who are minors makes clear its intention that the circumstance-specific approach should apply [under the catch-all provision of subsection (7)(I)].").

[4] *Compare* 18 U.S.C. § 1801(a) ("Whoever . . . has the intent to capture an image of a private area of an individual without their consent, and knowingly does so under circumstances in which the individual has a reasonable expectation of privacy . . . ."), *and id.* § 1801(b) (defining "private area" to mean "naked or undergarment clad genitals, pubic

purpose, *see* 34 U.S.C. § 20901, and its "focus on children," *United States v. Price*, 777 F.3d 700, 709 (4th Cir. 2015); *see also United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (noting that Congress intended to "cast a wide net to ensnare as many offenses against children as possible"), it seems even less plausible that Congress would have intended to include voyeurism, and a far less serious version of voyeurism at that, in the narrower part of the statute.

*       *       *

We should not lightly convert any crime committed with a sexual intent into a registrable offense under SORNA, which places onerous requirements on registered sex offenders and exposes them to criminal liability for failing to comply with those requirements, *see Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019). For the foregoing reasons, I would hold that South Carolina voyeurism categorically is not a sex offense under SORNA and reverse and remand with instructions to dismiss the indictment. Therefore, I respectfully dissent.

---

area, buttocks, or female breast"), *with* S.C. Code Ann. § 16-17-470(B) ("A person commits the crime of voyeurism if, for the purpose of arousing or gratifying sexual desire of any person, he or she knowingly *views*, photographs, audio records, video records, produces, or creates a digital electronic file, or films *another person*, without that person's knowledge and consent, while the person is in a place where he or she would have a reasonable expectation of privacy." (emphases added)).